FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

3:14-cv-1403-J-20MCR

| | |
|---|---|
| LAKE WORTH FIREFIGHTERS' PENSION TRUST FUND, on behalf of itself and all others similarly situated, | Civ. A. No. |
| | **CLASS ACTION** |
| Plaintiff, | |
| | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| RAYONIER INC., PAUL BOYNTON, HANS E. VANDEN NOORT, H. EDWIN KIKER, and DAVID L. NUNES, | JURY TRIAL DEMANDED |
| | **ECF CASE** |
| Defendants. | |

Plaintiff Lake Worth Firefighters' Pension Trust Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (a) regulatory filings made by Rayonier Inc. ("Rayonier" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued by and disseminated by the Company; (c) analyst reports concerning Rayonier; and (d) other public information regarding the Company.

### INTRODUCTION

1.     This securities fraud action is brought on behalf of purchasers of Rayonier's publicly traded securities between January 27, 2014 and November 7, 2014, inclusive (the "Class Period"). The claims asserted herein are alleged against Rayonier and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Rayonier, headquartered in Jacksonville, Florida, is an international forest products company primarily engaged in activities associated with timberland management and the sale and entitlement of real estate.  The Company began operations in 1926 as the Rainier Pulp & Paper Company and is currently structured as a real estate investment trust ("REIT"). Rayonier claims to be one of the largest timberland owners in the U.S. and has substantial holdings in Florida and across the southeastern United States.

3.      The Class Period starts on January 27, 2014.  On that day, Rayonier announced that it completed a comprehensive analysis of its business and determined that shareholders would be best served by spinning-off its Performance Fibres business through which the Company produces cellulose—a raw material used to manufacture a broad range of consumer-oriented products.   In connection with that spin-off, the Company announced a massive leadership overhaul with many of Rayonier's senior executives and directors leaving to head the new spin-off named Rayonier Advanced Materials Inc. ("Rayonier Advanced").  According to former CEO Paul Boynton, the spin-off would create two industry-leading public companies with Rayonier cementing its status as a pure forest resource and land company with superior timberlands and the best real estate assets among its peers.

4.      Throughout the Class Period, the Company repeatedly reported to investors its inventories of timber and assured investors that the Company manages its timberlands in a sustainable manner.  Those representations were included in press releases and in periodic and annual reports filed with the SEC, which also included the Company's reported financial results, including cost of sales, operating income, net income, diluted and basic earnings per share, and other important financial metrics.  Together with the Company's Annual Report and each of the

Company's quarterly reports, the current CEO and CFO attested to the accuracy of Rayonier's financial statements and the adequacy of the Company's financial and disclosure controls.

5.     These statements, and similar statements issued throughout the Class Period were false and misleading.  On November 10, 2014, before the start of trading, Rayonier reported earnings for its third quarter of 2014 and disclosed that it needed to restate its financial results for its first and second quarters of 2014.  That restatement was necessitated by the Company's inclusion of timber in environmentally protected areas, which could not be sold legally, in its calculation of merchantable timber inventory.  Rayonier admitted that this calculation "was incorrect, inconsistent with its definition of merchantable timber inventory, and a significant change from prior years."  As a result, the Company admitted that it had understated its cost of sales by approximately $2.0 million in the first, as well as the second quarters of 2014, which resulted in a corresponding overstatement of income of $1.9 million in the first quarter and $2.0 million in the second quarter.  Significantly, the Company also disclosed on November 10 that "management determined that there was a material weakness in the Company's internal controls related to merchantable timber inventory."

6.     Rayonier further disclosed that it would cut its quarterly dividend by almost 17% because the Company was forced to realign its strategy and lower future expected harvest volumes to support more sustainable timber harvesting.  Indeed, the Company acknowledged that for roughly a decade, Rayonier harvested timber in the U.S. Pacific Northwest at an unsustainable rate.  The dividend cut is a significant event to REIT investors who generally depend upon the REIT's dividend payments as an important source of returns.

7.     As a result of Rayonier's improper inventory calculation, restatement, dividend cut, and unsustainable harvesting practices, N. Lynn Wilson, Rayonier's Executive Vice

3

President, Forest Resources, resigned. This news caused the price of the Company's stock to drop from $33.90 per share to $28.82 per share on November 10, a decline of almost 15%.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.P.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Rayonier maintains its executive offices in this District and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

10. Plaintiff Lake Worth Firefighters' Pension Trust Fund ("Plaintiff") is a public pension fund based in Lake Worth, Florida that administers the benefits of current and retired firefighters and their beneficiaries. As of June 30, 2014, Plaintiff managed approximately $38 million in assets. Plaintiff purchased Rayonier securities on the New York Stock Exchange during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

11.     Defendant Rayonier, a North Carolina corporation based in Jacksonville, Florida, is a REIT that principally engages in the business of timberland management. The Company owns, leases, or manages approximately 2.6 million acres of working forests in the U.S. and New Zealand to supply timber to a wide variety of markets including pulp, paper, lumber, renewable energy and other wood products. Rayonier maintains its principal executive offices at 225 Water Street, Suite 1400, Jacksonville, Florida, 32202. The Company's common stock trades on the New York Stock Exchange, which is an efficient market, under ticker symbol "RYN." As of November 3, 2014, there were approximately 126.7 million shares of Rayonier stock outstanding.

12.     Defendant Paul Boynton ("Boynton") served as President and Chief Executive Officer of the Company from May 2012 until his resignation on June 27, 2014.

13.     Defendant Hans E. Vanden Noort ("Vanden Noort") served as Senior Vice President and CFO of the Company from June 2007 until his resignation in April 2014.

14.     Defendant H. Edwin Kiker ("Kiker") is the Company's CFO. He was appointed to that position effective May 1, 2014.

15.     Defendant David L. Nunes ("Nunes"), is the Company's President, CEO, and Director. He was appointed Chief Operating Officer effective June 9, 2014, and assumed the role of President and CEO on or around June 27, 2014.

16.     Defendants Boynton, Vanden Noort, Kiker, and Nunes are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with Rayonier, possessed the power and authority to control the contents of Rayonier's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with

copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts and omissions specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations and omissions which were being made were then materially false and/or misleading.

## BACKGROUND

17.     Rayonier, headquartered in Jacksonville, Florida, is a leading international forest products company primarily engaged in activities associated with timberland management and the sale and entitlement of real estate. Rayonier began operations in 1926 as the Rainier Pulp & Paper Company. In 1937, Rayonier became "Rayonier Incorporated," a public company traded on the NYSE, until 1968 when the Company became a wholly-owned subsidiary of ITT Corporation ("ITT"). On February 28, 1994, Rayonier again became an independent public company after ITT distributed all of Rayonier's common shares to ITT stockholders.

18.     Currently, the Company claims to be the eighth largest private timberland owner in the U.S., with approximately 2.6 million acres of owned or leased timberland and real estate in the U.S. and New Zealand. Rayonier has substantial timberland holdings in Washington, as well as across the south and southeastern United States, in Florida, Georgia, Alabama, Mississippi, Tennessee, Louisiana, Arkansas, Oklahoma, and Texas.

19.     Rayonier is structured as a real estate investment trust ("REIT"). As a REIT, Rayonier is required under the U.S. Internal Revenue Code of 1986 to distribute 90% of its ordinary taxable income to investors. During the Class Period, the Company maintained a

regular quarterly dividend that provided investors with a cash distribution of as much as $0.50 per share. These dividend payments were an important consideration to investors that decided to purchase Rayonier securities. Indeed, the Company touted its investment identity as "[o]ne of the largest pure-play timberland REITs with a peer-competitive dividend."

20.    Being that Rayonier's primary business involves harvesting natural resources from forests, the Company—as well as investors—placed an emphasis on Rayonier being able to manage the land in a sustainable manner. Indeed, the Company voluntarily subscribed to the Sustainable Forestry Initiative program, which purportedly included independent third-party audits of Rayonier's practices, and Rayonier marketed itself as an environmentally friendly company.

## DEFENDANTS DEFRAUD INVESTORS

21.    The Class Period starts on January 27, 2014. On that day, the Company reported fourth quarter and full-year 2013 financial results and announced that it would spin-off its Performance Fibers business to its shareholders as a newly formed publicly traded company named Rayonier Advanced Materials Inc. ("Rayonier Advanced"). Through the Performance Fibres business, the Company became the leading global producer of high-value cellulose, a natural polymer used as a raw material to manufacture numerous consumer products such as cigarette filters, liquid crystal displays, impact-resistant plastics, thickeners for food products, pharmaceuticals, and many other goods.

22.    As part of the spin-off, Rayonier announced that it would begin a massive leadership overhaul, with Boynton resigning from the Company to serve as Chairman, President and CEO of Rayonier Advanced. In addition, Rayonier also announced on January 27 that the

7

Company and Rayonier Advanced would have separate Boards of Directors and that current

Rayonier board membership would be assigned to the Board of one of the two companies.

23.    According to former CEO Boynton, the spin-off would "create two industry-

leading public companies: one a leading pure-play forest resources and land Company, with

superior timberlands and the best real estate assets among its peers; the other the world's leading

producer of high-value cellulose specialities, with best-in-class technology and margins. We

believe the separation will create two companies better positioned to increase the long-time value

for the shareholders."  Former CEO Boynton further represented that Rayonier "undertook a

thorough review of the Company's businesses and strategic alternatives in order to assess options

to maximize long-term shareholder value [] and concluded that a separation of the Performance

Fibers business . . . was the best strategic path for our shareholders."

24.    During the Class Period, the Company represented on its website that it is

committed to the sustainability of its resources as well as the environment.  Specifically,

Rayonier represented the following on its website:

> **Sustainability**
> Rayonier is committed to ensuring that our resources are as
> abundant in the future as they are today.  For us, sustainability is
> not just a trend; it's a tradition.  As a science-based natural
> resource company with a long heritage, Rayonier was examining
> environmental impacts long before they became a significant
> concern to most industries. Environmental protection is embedded
> into our operations and extends to every facet of our business.

25.    The statements and omissions set forth in ¶¶23-24 were materially false and

misleading.  In truth, the Company did not perform an adequate, let alone a comprehensive

review of its business in order to assess how to maximize long-term shareholder value.  This is

because the Company concealed from investors that Rayonier was improperly inflating its

merchantable timber inventory by including timber located in environmentally restricted areas

which could not be sold, and accordingly, understated or overstated numerous critical financial

metrics including cost of sales, net income, and operating income. The Company also concealed

that its internal controls related to merchantable timber inventory were deficient and that

Rayonier was harvesting timber in the U.S. Pacific Northwest at an unsustainable rate.

26.     On February 28, 2014, the Company filed its 2013 Annual Report with the SEC.

In that report, Rayonier represented that when it calculated merchantable timber inventory, it

utilized statistical sampling and made adjustments on the basis of environmental restrictions,

among other things. Specifically, the Company represented that it had the following volumes of

merchantable timber by location and type, as of December 31, 2013 (in thousands of short green

tons):

| Location | Softwood | Hardwood | Total | % |
|---|---|---|---|---|
| Atlantic | 24,379 | 12,742 | 37,121 | 42 |
| Gulf | 20,103 | 8,431 | 28,534 | 32 |
| Northern | 8,489 | 608 | 9,097 | 10 |
| New Zealand | 13,251 | 541 | 13,792 | 16 |
|  |  |  | 88,544 | 100 |

27.     Together with the filing of the Company's 2013 Annual Report, former CEO

Boynton and former CFO Vanden Noort filed certifications attesting to the accuracy of the

Company's financial statements and the effectiveness of Rayonier's financial and disclosure

controls.

28.     The Company also represented in its 2013 Annual Report that it manages its

timberlands in a sustainable manner. Specifically, Rayonier represented that:

> We manage our U.S. timberlands in accordance with the
> requirements of the Sustainable Forestry Initiative® ("SFI")
> program, a comprehensive system of environmental principles,
> objectives and performance measures that combines the perpetual
> growing and harvesting of trees with the protection of wildlife,

plants, soil and water quality. Through application of our site-specific silvicultural expertise and financial discipline, we manage timber in a way that optimizes site preparation, tree species selection, competition control, fertilization, timing of thinning and final harvest. We also have a genetic seedling improvement program to enhance the productivity and quality of our timber and overall forest health. In addition, non-timber income opportunities associated with our timberlands such as recreational licenses and specialty forest products, as well as considerations for the future higher and better uses of the land, are integral parts of our site-specific management philosophy. All these activities are designed to maximize value while complying with SFI requirements.

Our New Zealand JV's timberland holdings are certified under the Forest Stewardship Certification® ("FSC") program. FSC provides an internationally recognized standard for responsible forest management.

29.    The statements and omissions set forth in ¶¶26-28 were materially false and misleading. In truth, the Company's calculation of merchantable timber inventory did not reflect environmental restrictions. Further, the Company's reported volumes of merchantable timber were inflated because they reflected timber that did not meet Rayonier's definition of merchantable timber inventory in that much of the timber was located in environmentally restricted areas. Similarly, the Company's statements regarding its compliance with the Sustainable Forestry Initiative were false because Rayonier was counting as inventory timber in specifically designated parcels of land located in environmentally sensitive areas, and the Company was harvesting timber in the U.S. Pacific Northwest at an unsustainable rate.

30.    On April 28, 2014, the Company announced that former CFO Vanden Noort would resign from Rayonier effective April 30, 2014, and would be replaced by H. Edwin Kiker, effective May 1, 2014.

31.    On April 30, 2014, Rayonier filed its quarterly report for the Company's first quarter of 2014. In that report, Rayonier reported operating income of $65,008,000, net income

of $43,292,000, and diluted and basic earnings per share of $0.34 per share. The Company also reported in the quarterly report that Rayonier's cost of sales was $302,650,000. Together with the filing of the Company's quarterly report for the first quarter of 2014, former CEO Boynton and former CFO Vanden Noort filed certifications attesting to the accuracy of the Company's financial statements and the effectiveness of Rayonier's financial and disclosure controls.

32.     The statements and omissions set forth in ¶31 were materially false and misleading. In truth, the Company's reported operating income, net income, and diluted and basic earnings per share were inflated because the Company understated its cost of sales by approximately $2 million. This caused Rayonier's operating income and net income to be overstated by approximately $1.9 million each, and the Company's basic and diluted earnings per share to be inflated by $.01 per share and $.02 per share, respectively.

33.     On May 12, 2014, the Company announced the appointment of David L. Nunes as Chief Operating Officer of Rayonier effective June 9, 2014, to assume the role of President and CEO upon the resignation of Boynton from Rayonier and his appointment as Chairman, President, and CEO of Rayonier Advanced, which would occur after the completion of the spin-off.

34.     On May 30, 2014, Rayonier announced the Boards of Directors for Rayonier and Rayonier Advanced following the separation:

**Rayonier (the company's current Forest Resources and Real Estate business):**
Richard D. Kincaid, Chairman*
John A. Blumberg
Governor John Ellis (Jeb) Bush*
Dod A. Fraser
Scott R. Jones
Senator Blanche L. Lincoln
V. Larkin Martin*
David L. Nunes, CEO
David W. Oskin*

**Rayonier Advanced Materials (the company's current Performance Fibers business):**
Paul G. Boynton, Chairman*
C. David Brown, II, Lead Director*
DeLyle W. Bloomquist
Mark E. Gaumond*
James F. Kirsch
Lisa M. Palumbo
James H. Miller*
Thomas I. Morgan*
Ronald Townsend*

\* Currently a member of Rayonier's board of directors

35.     Given the significant exodus of senior executives and directors from Rayonier to Rayonier advanced, analysts questioned the Company's prospects going forward. Indeed, an article published on *Seeking Alpha.com* on June 17, 2014 summarized that "Six Rayonier board members, including its CEO, are joining its spin-off indicating key insiders believe the spin-off may have much better prospects than its parent." The Company continued to conceal that its financial statements were incorrect and that it was managing its forest land in an unsustainable manner.

36.     On June 27, 2014, Rayonier completed the spin-off of its Performance Fibers business. In connection with the completion of that spin-off, several Rayonier executives resigned, including Boynton, Michael R. Herman (Senior Vice President, General Counsel and Assistant Corporate Secretary), Jack M. Kriesel (Senior Vice President, Performance Fibers) and Benson K. Woo (Chief Accounting Officer). In addition, several directors of Rayonier resigned from the Company's Board, as noted above, including Boynton, C. David Brown, II, Mark E. Gaumond, James H. Miller, Thomas I. Morgan and Ronald Townsend. Appointed as directors in their place were John A. Blumberg, Dod A. Fraser, Scott R. Jones, Senator Blanche L. Lincoln

and David L. Nunes. Richard D. Kincaid was appointed Chairman of the Board of Directors of Rayonier.

37.     On August 8, 2014 the Company filed its quarterly report for its second quarter of 2014.  In that report, Rayonier reported operating income of $39,568,000, net income of $18,140,000, and diluted and basic earnings per share of $0.14 per share and $0.15 per share respectively.   The Company also reported in its quarterly report that its cost of sales for Rayonier's second quarter of 2014 was $121,105,000.    Together with the filing of the Company's quarterly report for the second quarter of 2014, CEO Nunes and CFO Kiker filed certifications attesting to the accuracy of the Company's financial statements and the effectiveness of Rayonier's financial and disclosure controls.

38.     The statements and omissions set forth in ¶37 were materially false and misleading.  In truth, the Company's reported operating income, net income, and diluted and basic earnings per share were inflated because the Company understated its cost of sales by approximately $2 million.   This caused Rayonier's operating income to be overstated by approximately $1.9 million, its net income to be overstated by approximately $2 million, and the Company's basic and diluted earnings per share to each be inflated by $.02 per share.

39.     Indeed, during the Class Period, Rayonier never disclosed to investors that it was inflating its merchantable timber inventory levels for 2014 and, as a result, that the Company was understating its cost of goods sold and overstating its operating income and net income. Rayonier also never disclosed to investors that there were significant weaknesses in the Company's internal controls related to merchantable timber inventory and that the Company was engaging in unsustainable harvesting practices.

13

40.     Then, on November 10, 2014, before the start of trading, Rayonier reported earnings for its third quarter of 2014.   In connection with that earnings report, the Company announced that it was forced to restate its financial results for the quarterly periods ending March 31, 2014 and June 30, 2014 because Rayonier was including in its calculation of merchantable timber inventory, timber in protected areas which could not be sold.   The Company claimed to discover these issues following the spin-off of Rayonier Advanced and completing an internal review of the Company's operations with the assistance of counsel, accountants and financial advisors.

41.     Specifically, Rayonier disclosed that after completing the internal review, the Company concluded that it included in merchantable timber inventory, timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas, which was incorrect, inconsistent with its definition of merchantable timber inventory, and a significant change from prior years.   As a result, the Company concluded that it understated its depletion expense in cost of goods sold (referred to as "Cost of sales" in the Company's consolidated statements of income) by approximately $2.0 million in each of the quarterly periods ended March 31, 2014 and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations of $1.9 million and $2.0 million, respectively, in those periods.

42.     The following tables summarize the effect of these restatements for the three months ended March 31, 2014 and June 30, 2014:

**Consolidated Statements of Income and Comprehensive Income
for the Three Months Ended March 31, 2014**

|  | As Previously Reported (a) | Restatement | As Restated (a) |
|---|---|---|---|
| Operating Income | $      65,008 | $      (1,969) | $      63,039 |
| Income Tax Expense | (7,732) | 20 | (7,712) |
| Income from Continuing Operations | 43,292 | (1,949) | 41,343 |
| Net Income | 43,292 | (1,949) | 41,343 |
| Net Income Attributable to Rayonier Inc. | 43,375 | (1,949) | 41,426 |
| Basic Earnings Per Share Attributable to Rayonier Inc. |  |  |  |
| Continuing Operations | $      0.34 | $      (0.01) | $      0.33 |
| Discontinued Operations | — | — | — |
| Net Income | $      0.34 | $      (0.01) | $      0.33 |
| Diluted Earnings Per Share Attributable to Rayonier Inc. |  |  |  |
| Continuing Operations | $      0.34 | $      (0.02) | $      0.32 |
| Discontinued Operations | — | — | — |
| Net Income | $      0.34 | $      (0.02) | $      0.32 |

(a)   Includes the Performance Fibers business that was spun-off on June 27, 2014.

**Consolidated Balance Sheet
as of March 31, 2014**

|  | As Previously Reported | Restatement | As Restated |
|---|---|---|---|
| Prepaid and Other Current Assets | $      54,557 | $      20 | $      54,577 |
| Timber and Timberlands, Net of Depletion and Amortization | 2,069,518 | (1,969) | 2,067,549 |
| Retained earnings | 996,573 | (1,949) | 994,624 |

|  | Consolidated Statements of Income and Comprehensive Income for the Three Months Ended June 30, 2014 | | |
| --- | --- | --- | --- |
|  | As Previously Reported | Restatement | As Restated |
| Operating Income | $ 39,568 | $ (1,991) | $ 37,577 |
| Income Tax Expense | (13,515) | (41) | (13,556) |
| Income from Continuing Operations | 6,056 | (2,032) | 4,024 |
| Income from Discontinued Operations, net | 12,084 | — | 12,084 |
| Net Income | 18,140 | (2,032) | 16,108 |
| Net Income Attributable to Rayonier Inc. | 18,385 | (2,032) | 16,353 |
| Basic Earnings Per Share Attributable to Rayonier Inc. | | | |
| Continuing Operations | $ 0.05 | $ (0.02) | $ 0.03 |
| Discontinued Operations | 0.10 | — | 0.10 |
| Net Income | $ 0.15 | $ (0.02) | $ 0.13 |
| Diluted Earnings Per Share Attributable to Rayonier Inc. | | | |
| Continuing Operations | $ 0.05 | $ (0.02) | $ 0.03 |
| Discontinued Operations | 0.09 | — | 0.09 |
| Net Income | $ 0.14 | $ (0.02) | $ 0.12 |

43.     The Company also filed on November 10 an amendment to its 2013 Annual Report in which it corrected the disclosures of merchantable inventory as of December 31, 2013:

| (Tons in 000s) | As disclosed in the Initial Form 10-K | As disclosed in this Amended Form 10-K | Percentage Difference |
| --- | --- | --- | --- |
| Atlantic | 37,121 | 34,324 | (8)% |
| Gulf | 28,534 | 24,641 | (14)% |
| Northern | 9,097 | 7,370 | (19)% |
| New Zealand | 13,792 | 13,792 | — % |
| Total | 88,544 | 80,127 | (10)% |

44.     Significantly, the Company also disclosed on November 10 that "management determined that there was a material weakness in the Company's internal controls related to

16

merchantable timber inventory." Specifically, Rayonier's controls related to the preparation and review of the annual depletion calculation were not adequate to ensure that the changes in depletion rate estimates used to recognize depletion rate expense in 2014 were in accordance with GAAP. Rayonier's controls were also deficient because they relied on electronic data from information technology systems with ineffective user access and program change management general controls.

45.     Rayonier further disclosed that it would cut its quarterly dividend from $0.30 per share to $0.25 per share, a decrease of almost 17%. This is because the Company was forced to realign its strategy and lower future expected harvest volumes to support more sustainable timber harvesting. Indeed, the Company acknowledged that for roughly a decade, Rayonier harvested timber in the U.S. Pacific Northwest at a rate that was not sustainable on a long-term basis. Because the Company is organized as a REIT, the change to the dividend is a highly material event. REIT investors generally depend upon the REIT's dividend payments as a primary source of returns.

46.     Steven Chercover, an analyst at D. A. Davidson & Co. described the Company's announcement as "confidence shaking." Chercover best described the Company's actions as "cutting everything, dividend, inventory and harvest projections." Chercover said of this announcement, "the company has been harvesting above sustainable levels for the past decade, inventories were overstated and depletion was understated in recent quarters, compromising the quality of earnings thus far this year. We can't recall a situation in covering the Timber REITs where the credibility of [management] has been called into question so blatantly."

47.     As a result of Rayonier's improper inventory calculation, restatement, dividend cut, and unsustainable harvesting practices, the Company also announced on November 10 that it

accepted the resignation of N. Lynn Wilson, Rayonier's Executive Vice President, Forest Resources, effective November 7, 2014.   On this news, the price of the Company's stock declined from $33.90 per share to $28.82 per share on November 10, a decline of almost 15%.

### LOSS CAUSATION

48.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.   This artificially inflated the price of Rayonier securities and operated as a fraud or deceit on the Class. Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on November 10, 2014 the price of Rayonier securities fell precipitously, as the prior artificial inflation came out of the price over time.   As a result of their purchases of Rayonier securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

### CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased the securities of Rayonier during the Class Period (the "Class").   Excluded from the Class are Defendants and their families, directors, and officers of Rayonier and their families and affiliates.

50.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of November 3, 2014, there were approximately 126.7 million shares of Rayonier stock outstanding, owned by hundreds or thousands of investors.

51.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

A.     Whether Defendants violated the Exchange Act;

B.     Whether Defendants omitted and/or misrepresented material facts;

C.     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

D.     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

E.     Whether the price of Rayonier securities was artificially inflated;

F.     Whether Defendants' conduct caused the members of the Class to sustain damages; and

G.     The extent of damage sustained by Class members and the appropriate measure of damages.

52.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

53.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

54.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

55.     Rayonier's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Indeed, those warnings were themselves misleading because they presented as potential risks conditions that already existed or were known to be imminent when the warnings were made.

56.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Rayonier who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

57.     At all relevant times, the market for Rayonier's securities was an efficient market for the following reasons, among others:

A.     Rayonier stock met the requirements for listing, and was listed and actively traded on the New York Stock Exchange, a highly efficient and automated market;

B.     As a regulated issuer, Rayonier filed periodic public reports with the SEC and the New York Stock Exchange;

20

C.     Rayonier regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

D.     Rayonier was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

58.     As a result of the foregoing, the market for Rayonier securities promptly digested current information regarding Rayonier from all publicly available sources and reflected such information in the price of Rayonier securities. Under these circumstances, all purchasers of Rayonier securities during the Class Period suffered similar injury through their purchase of Rayonier securities at artificially inflated prices and the presumption of reliance applies.

59.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the accuracy of the Company's financial statements and effectiveness of internal controls— information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the accuracy of the Company's financial statements and

sustainable forestry practices to Rayonier's business, as set forth above, that requirement is satisfied here.

## COUNT I

**For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Rayonier securities at artificially inflated prices.

62.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Rayonier securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

64.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained

misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Rayonier's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

66.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Rayonier securities. Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices for Rayonier securities had been artificially inflated by Defendants' fraudulent course of conduct.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

68.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

69.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

70.     The Individual Defendants acted as controlling persons of Rayonier within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-

day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Rayonier, the Individual Defendants had the power and ability to control the actions of Rayonier and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

71.    WHEREFORE, Plaintiff prays for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

72.    Plaintiff demands a trial by jury.

DATED: November 13, 2014

/s/ Robert D. Klausner
**KLAUSNER, KAUFMAN, JENSEN
& LEVINSON**
Robert D. Klausner (Bar No. 244082)
10059 Northwest 1st Court
Plantation, Florida 33324

24

Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com

*Local Counsel for Plaintiff Lake Worth
Firefighters' Pension Trust Fund*

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Gerald H. Silk (*pro hac vice* motion to be filed)
Avi Josefson (*pro hac vice* motion to be filed)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com

*Counsel for Plaintiff Lake Worth Firefighters'
Pension Trust Fund*